### WELCH *v.* NEW YORK CENT. & H. R. R. CO.

*(Supreme Court, General Term, Fifth Department.    January, 1892.)*

**1. INJURY TO BRAKEMAN—PROOF OF NEGLIGENCE.**

Plaintiff was injured by defendant railroad while engaged as a brakeman in coupling an engine to a car. He testified that when he attempted to remove the drawpin it became fastened, and he stumbled against a pile of cinders on defendant's track, and hurt his hand, and that, the draw-heads of the car and engine being of unequal height, he should have been supplied with an S. link to make the coupling, instead of a straight link, which was given him. The evidence did not show how long the cinders had been on the track, who put them there, or that defendant knew they were there, or the cause of the pin becoming fastened. *Held*, that plaintiff failed to show that his injury was caused by defendant's negligence.

**2. SAME—RISKS ASSUMED.**

In such case, when plaintiff saw the unequal height of the draw-heads, and that the link was straight, he assumed the responsibility in attempting to use the straight link to make the coupling.

Exceptions from circuit court, Monroe county.

Action by John H. Welch against the New York Central & Hudson River Railroad Company. Verdict for defendant directed by the court. Plaintiff makes a motion for a new trial upon exceptions heard at general term. New trial denied.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Eugene Van Voorhis*, for plaintiff. *Cassius C. Davy*, for defendant.

LEWIS, J. It became the duty of the plaintiff, as a brakeman in the employ of the defendant, to couple an engine to a car. There was, at the place where the plaintiff attempted to effect the coupling, a pile of cinders or ashes

upon the defendant's road-bed, between the rails. In order to make the coupling, it became necessary for the plaintiff to remove an iron pin from the draw-head of the engine; and, in thus attempting to remove the pin, he stumbled against the pile of cinders or ashes, and, in order to prevent falling upon the ground, he held on to the draw-head of the engine, and his hand was caught between the bumper of the engine and the car, and his fingers were crushed. The evidence failed to show how the ashes came to be placed upon the road-bed, or what length of time they had been there, or who placed them there. No notice of the existence of the cinders was shown to have been given to the defendant, or that they had remained there such a length of time as to be constructive notice of their presence. For all that appears in the evidence, the cinders may have been deposited there the same night of the accident. The plaintiff testified that, when he attempted to remove the coupling-pin from the draw-head of the engine, it had in some way become fastened so that he was not able to pull it out, and, that, while thus engaged in attempting to remove it, he stumbled, as above stated. The evidence failed to show the cause of the pin being fastened in the draw-head. The difficulty may have arisen from many causes. The plaintiff testified that he had taken the same pin from the draw-head of the engine a short time before he attempted to remove it on this occasion. The reasonable inference is that the difficulty arose from some recent cause. The defendant was not shown to have had any knowledge of its defective condition.

Another cause of complaint was that the draw-head of the engine and the draw-head of the car that the plaintiff attempted to couple were of unequal height, and that the link attached to the draw-head of the engine, and which was to be used in effecting the coupling, was straight, when it should have been crooked, in form like the letter S. It was shown that the draw-heads of cars in use, which were required to be attached to the engine from time to time, were frequently of unequal height; and that, while in such cases the crooked link was more convenient than a straight one, in the frequent changes in making up trains straight links and crooked ones were indiscriminately used. The plaintiff testified that he did not know but that there were crooked links on the engine and in the caboose. The plaintiff, when he attempted to make the coupling, saw that the draw-heads were of unequal height, and that the link was straight, and assumed the responsibility in attempting to use the straight link.

Another cause of complaint by the plaintiff was the failure of the company to furnish him with a coupling-stick. He testified that when he entered the employ of the defendant he signed a receipt for a coupling-stick, but did not get one. He testified that they gave him a note to get one, but there was no one in the yard-office, and they never gave him one. He further testified: "I have seen lots of coupling-sticks. I have seen lots of brakemen have them, but I never saw a man make a coupling with one. I saw them in the office at Newark, and I saw them in the cars, but they never used them." He had provided himself with a brake-stick, which could be used the same as a coupling-stick, but he did not use it. The accident did not occur because the plaintiff had not been furnished with a coupling-stick. He was injured while attempting with his hand to draw the pin from the draw-head of the engine. The coupling-stick could not have been used for that purpose. The plaintiff failed to show that the defendant was guilty of negligence causing his injuries. He suffered a serious injury, but failed to make a case against the defendant entitling him to recover. Plaintiff's motion for a new trial is denied, with costs, and judgment is ordered for the defendant on the verdict. All concur.